IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISCTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WESLEY SMITH, JONATHON MYERS, MICHAEL TYLER, JASON DENNER, ANDREW LAMBIRIS, ANDRE HIDALGO DOUCET II, <br><br> PLAINTIFFS, <br><br> v. <br><br> SANDERS ENGINEERING & ANALYTICAL SERVICES, INC., <br><br> DEFENDANT. | CIVIL ACTION NO.: <br> 1:25-cv-150 <br><br> JURY DEMAND |

# COMPLAINT

## I. Introduction

1. Plaintiffs bring this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq.*, to remedy Defendant's willful violations of the overtime provisions of the FLSA. Plaintiffs seek equitable relief, lost wages and benefits, liquidated damages, and reasonable attorneys' fees and costs.

## II. Jurisdiction and Venue

2. This Court has jurisdiction pursuant to 28 U.S.C. §1331, as this action arises under federal law. Venue is proper pursuant to 28 U.S.C. 1391.

## III. Parties

3. Plaintiff Wesley Smith is over the age of 19 and is a resident of Mobile County, Alabama. Plaintiff has been employed by Defendant as an Environmental Specialist from 1/3/2023 to the present.

4. Plaintiff Jonathon Myers is over the age of 19 and is a resident of Mobile County, Alabama.

5. Plaintiff Michael Tyler is over the age of 19 and is a resident of Mississippi.

6. Plaintiff Jason Denner is over the age of 19 and is a resident of Mobile County, Alabama.

7. Plaintiff Andrew Lambiris is over the age of 19 and is a resident of Mississippi.

8. Plaintiff Andre Hidalgo Doucet II is over the age of 19 and is a resident of Baldwin County, Alabama.

9. Defendant Sanders Engineering and Analytical Services, Inc. ("SEAS") is based in Semmes, Mobile County, Alabama, and is an "employer" as that term is defined by the FLSA.

## IV. **Factual Allegations**

10. SEAS is an environmental engineering firm specializing in air emissions testing.

11. SEAS serves clients in several Southeastern states and thus engages in interstate commerce.

12. SEAS management staff is located at an office in Semmes, Alabama, and includes an office manager, operations manager, business development manager, and a management position with the title of Senior Environmental Specialist.

13. The plaintiffs all work or formerly worked in a job position with the job title of Environmental Specialist / Field Technician.

14. A job posting for the Environmental Specialist position states that "[t]he ideal candidate will have a Bachelor's Degree in Science or Engineering."

15. Environmental Specialists are not licensed engineers.

16. Most of the Plaintiffs have only a bachelor's degree.

17. As Environmental Specialists, Plaintiffs work 75% of their time in the field, traveling to client locations.

18. The Plaintiffs' primary duties as Environmental Specialists are to assist in the on-site sampling of emissions from various pollution sources, typically emissions from paper, steel, and lumber mills.

19. Although most teams include an environmental specialist acting as a Team Lead, the Team Lead does not have authority to hire, fire, or discipline.

20. The duties of the team lead are distinct from the other Environmental Specialists, and include carrying the company credit card and paying for expenses, serving as the point of contact for the team at a work site, and receiving directions from management and communicating those directions to the team.

21. When working in the field, Plaintiffs travel to a location and set up testing equipment. This requires manually moving heavy equipment to the proper location in the plant, climbing stairs or ladders or using a manlift to access smokestacks, then using ropes to raise the equipment to the top of the smokestacks where measurements must be taken.

22. Plaintiffs then run tests using the equipment, which involve one person being on the stack and one person at ground level writing down data.

23. At all times, Plaintiffs must strictly follow established procedures as dictated by federal regulations and directed by management.

24. Plaintiffs lack the discretion to vary from such established procedures in conducting their work in the field.

25. After testing is finished, Plaintiffs then dismantle the equipment, load it back on vehicles, and return the equipment to Defendant's facilities.

26. The Plaintiffs then measure the samples collected in the field using lab equipment. This involves evaporating and drying the samples and weighing them to see how much particulate was captured.

27. Again, in conducting such measurements, Plaintiffs must strictly follow established procedures and lack the discretion to vary from such procedures.

28. Plaintiffs then perform data entry, inputting the data into printed data sheets and spreadsheets for review by management.

29. Plaintiffs provide the data resulting from these measurements to management staff in raw form for use by management.

30. Management analyzes the raw data produced by the Environmental Specialists and uses that data to produce reports, to give recommendations to clients, and to interact with regulatory agencies.

31. Plaintiffs are also responsible for the following: cleaning the sampling equipment and calibrating it; cleaning vehicles, including washing them, and reorganizing the equipment carried in them; and cleaning and organizing the garage, including sweeping, inventory counts, and housekeeping.

32. Plaintiffs work more than forty hours most weeks.

33. Defendant does not maintain a record of the hours worked by each Environmental Specialist each day.

34. Defendant does not maintain a record of the total hours worked by each Environmental Specialist each work week.

35. Defendant does not maintain a record of the overtime earnings for each work week.

36. Occasionally, Defendant will allow Plaintiffs to put in for extra pay for hours worked on the weekend. Apart from such payments, each Plaintiff receives a fixed paycheck for a salary amount that does not vary from week to week, regardless of the number of hours worked each week.

37.     Plaintiffs do not receive compensation for hours worked over forty per week.

38.     On the 2024 W2s for each Plaintiff, Defendant has reported a substantial amount of alleged overtime compensation in box 14, labeled "EX OT WAGES."

39.     Effective January 1, 2024, pursuant to the Overtime Exemption Act 2023-421, later amended by Act 2024-437, "overtime pay received by a full-time hourly wage paid employee for hours worked above 40 in any given week are excluded from gross income and therefore exempt from Alabama state income tax."[1]

40.     Guidance from the Alabama Department of Revenue directs employers that "Exempt overtime wages should be reported in box 14 of the W2 and not box 16 State Wages. Box 14 reporting of Alabama exempt overtime begins with the 2024 tax year. Do not include any qualifying exempt overtime in box 16."[2]

41.     Box 14 on each Plaintiff's 2024 W2 appears to represent Defendant's estimate of the value of overtime work performed by each Plaintiff during tax year 2024 exempt from Alabama income tax pursuant to the Overtime Exemption Act 2023-421, as amended by 2024-437.

---

[1] https://www.revenue.alabama.gov/individual-corporate/overtime-pay-exemption-amended/ (last accessed March 13, 2025).
[2] https://www.revenue.alabama.gov/individual-corporate/overtime-pay-exemption-amended/ (last accessed March 13, 2025).

42. However, for each of the Plaintiffs, Defendant has not reduced the "State wages, tips, etc.," in box 16 by the amount of "EX OT WAGES" disclosed on box 14.

43. Defendant did not reduce the amount in box 16 by the amount in box 14 of Plaintiffs' 2024 W2s because Defendant did not pay Plaintiffs the overtime compensation disclosed by Defendant in Box 14.

44. This is the third time that Defendant has been sued for similar practices.

45. In 2006, Defendant was sued by two employees for similar violations of the FLSA in *Ryan Powell and John Wilson. v. Sanders Engineering Services, Inc. and Analytical Services and Johnny W. Sanders*, Case No. 1:06-cv-00472-CG-B (S.D. AL.)

46. In 2019, Defendant was sued by two more employees for similar violations of the FLSA in *Kevin Anderson and Jay Jackson v. Sanders Engineering and Analytical Services, Inc*., Case No. 1:19-cv-00608.

47. Despite being twice sued for similar issues, Defendants have continued to willfully violate the Fair Labor Standards Act.

V. **Cause of Action**

48. This action is brought pursuant to the FLSA, 29 USC §201 *et seq*., to remedy Defendants' violations of the FLSA, including but not limited to its overtime pay and recordkeeping provisions.

49.     At all times in this action, Defendant has been an enterprise engaged in interstate commerce and has been an "employer" subject to the requirements of the FLSA.

50.     Plaintiffs are employees who regularly travel to other states to perform work for Defendant and thus are involved in interstate commerce.

51.     For the past three years, Defendant has willfully violated the FLSA by permitting or requiring Plaintiffs to work in excess of forty hours per week without paying overtime compensation for such time.

52.     For the past three years, Defendant has willfully failed to keep accurate records regarding the hours worked by each Environmental Specialist each workday or the overtime hours worked by each Environmental Specialist each workweek.

53.     Defendant's violations are willful because Defendant pays Plaintiffs a fixed weekly salary despite knowing that Plaintiffs do not satisfy the requirements of any exemption from the FLSA's overtime pay provisions.

**VI.     Prayer for Relief**

54.     Wherefore, Plaintiffs respectfully pray that this court assume jurisdiction of this action and after trial:

55.     Issue a declaratory judgment that the employment policies and practices of Defendant violate the rights of Plaintiffs as secured by the FLSA;

56. Grant those Plaintiffs who are currently employed by Defendant a permanent injunction enjoining Defendant, its agents, successors, employees, and those acting in concert with Defendant and at Defendant's request from continuing to violate the FLSA;

57. Award Plaintiffs compensation for unpaid overtime work at the overtime premium rate of pay, for the past three years plus interest compounded daily to the date of judgment at the NLRB standard rate, and an equal amount of liquidated and exemplary damages in an amount to be proven at trial;

58. Award all costs of litigation, including expert fees and attorney's fees, as well as all other costs made recoverable under federal law, and;

59. Award such other legal and equitable relief as the Court deems proper.

**THE PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

Dated: April 11, 2025.

                Respectfully submitted,

                */s/ L. William Smith*
                Jon C. Goldfarb asb-5401-f58j
                L. William Smith asb 8660-a61s
                Christina M. Malmat asb-1214-y44q
                Counsel for Plaintiff

**OF COUNSEL:**
Wiggins, Childs, Pantazis, Fisher,
& Goldfarb, LLC
301 19th Street North
Birmingham, AL 35203
Telephone No.: (205) 314-0500
Facsimile: (205) 254-1500
jcg@wigginschilds.com
wsmith@wigginschilds.com
cmalmat@wigginschilds.com